**Opinion issued January 13, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00062-CV

———————————

**TAMMY ANDERSON, Appellant**

**V.**

**HOUSTON COMMUNITY COLLEGE SYSTEM AND JOHNELLA R. BRADFORD, INDIVIDUALLY, Appellees**

---

**On Appeal from the 334th District Court**
**Harris County, Texas**
**Trial Court Case No. 2012-40596**

---

## O P I N I O N

Tammy Anderson sued her employer, the Houston Community College System ("HCC"), and her former supervisor, Johnella R. Bradford, for racial and

gender discrimination, harassment, and retaliation pursuant to the Texas Commission on Human Rights Act ("TCHRA"). HCC and Bradford both filed pleas to the jurisdiction and traditional and no-evidence motions for summary judgment. The trial court granted HCC's and Bradford's motions and subsequently awarded Bradford $44,049.40 in attorney's fees and court costs against Anderson. In five issues, Anderson contends that the trial court erred in (1) granting HCC's plea to the jurisdiction because she pleaded facts that supported a violation of the TCHRA, which waived HCC's governmental immunity; (2) granting Bradford's plea to the jurisdiction because her charge to the Texas Workforce Commission specifically identified Bradford as a respondent; (3) and (4) granting both HCC's and Bradford's traditional and no-evidence summary judgment motions because she presented evidence raising a fact issue on their discriminatory and unlawful employment practices; and (5) awarding attorney's fees to Bradford because Bradford should not be a prevailing party under the TCHRA and because the amount of the award is unreasonable and excessive.

We affirm.

### Background

In April 2010, Dr. Johnella Bradford, the Dean of the Workforce Development Division at HCC's Southeast College campus, hired Anderson as an

2

office manager.  Bradford, an African-American woman, supervised the office, which consisted of Anderson, who is also an African-American woman, two department chairs, and three or four other part-time staff members.  Bradford reported to Dr. Irene Porcarello, the president of the Southeast College.

Anderson kept a personal record of occurrences regarding the behavior of Bradford and others that concerned her.  In June 2010, Anderson received a performance review from Bradford.  She complained that Bradford did not properly conduct the review pursuant to HCC guidelines because she did not meet with her to discuss her performance before preparing the review.  Anderson alleged that after she complained about this review, Bradford began "publicly chastising, threatening and humiliating" her.

Anderson alleged that Bradford occasionally grabbed her arm in a physically threatening manner, that she made negative comments on several occasions concerning Anderson's weight, which included making suggestions to Anderson concerning particular exercise machines that she should buy, and that she allowed male employees in the office to wear jeans on any day of the week but allowed female employees to wear jeans only on Fridays.  Anderson also alleged that, in March 2011, on the Friday before spring break, she asked Bradford whether the office staff could leave early to start their vacation.  Bradford allegedly responded,

"Just like a nigga. Always wanting to leave early." This is the only instance in which Bradford allegedly used a racial slur towards Anderson.

Anderson and Bradford's working relationship continued to deteriorate, and, on November 1, 2011, three months after Bradford's last weight-related comment to Anderson, Anderson filed a complaint with HCC's Office of Institutional Equity ("OIE"), alleging that Bradford had violated HCC policy by harassing and discriminating against her based on her race and gender. Shortly thereafter, Anderson filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission ("EEOC"), alleging race and gender-based discrimination and retaliation. In this charge, Anderson alleged that Bradford subjected her

> (1) to unwelcome harassment regarding [her] body weight; (2) to different terms and conditions of employment by strictly enforcing a personal dress code policy with the female staff in [Bradford's] department while allowing male staff to dress less than office casual—with some male staff allowed to wear jeans daily; [and] (3) her use of racial comments.

Anderson stated, "I believe that I am being retaliated against for engaging in a protected activity and continue to be discriminated against because of my race (Black) and sex (female) in violation of Title VII of the Civil Rights Act of 1964, as amended."

The OIE investigated Anderson's complaint against Bradford and issued a report in January 2012 concluding that "evidence supports a violation of HCC

4

Policy G.1 (Discrimination and Harassment)." The OIE presented its findings to Dr. Porcarello, who accepted the findings and placed Bradford on an "Employee Corrective Action and Performance Improvement Plan." This plan acknowledged that Bradford had used a racial slur when she addressed Anderson and that she had established a separate dress code for men and women in her office. Dr. Porcarello also transferred Bradford to another office and reassigned Anderson to work under a different Dean of Workforce Development. Anderson and Bradford both remain employed at HCC.

The EEOC issued Anderson a right to sue letter, and Anderson filed the underlying lawsuit against HCC and Bradford, in her individual capacity, alleging race and gender-based discrimination, hostile work environment, and retaliation under the TCHRA.

HCC filed a combined plea to the jurisdiction, no-evidence summary judgment motion, and traditional summary judgment motion. HCC argued that, as a governmental entity, it was immune from suit and that the TCHRA did not waive its immunity in this case because Anderson could not prove at least one element of each of her claims. HCC argued that Anderson could not present direct evidence of race or gender-based discrimination, because even if Bradford used a racial slur to refer to Anderson, she did so on only one occasion, the slur was not proximate in time to any adverse employment action against Anderson, and it was not related

5

to any adverse employment action. HCC further argued that Anderson could not establish a prima facie case on her discrimination claims because she could not present evidence that she suffered an adverse employment action, such as discharge or a reduction in compensation or benefits. HCC presented excerpts from Anderson's deposition as evidence that Anderson was still employed by HCC, that it had never reduced her benefits, that she had received pay increases, and that, although she had alleged that HCC discriminated against her by failing to hire her for three other positions, Anderson could present no evidence of who had been hired for the positions, the qualifications of those three individuals, or the races or genders of those three individuals.

HCC also argued that Anderson could not establish that Bradford and HCC subjected her to a hostile work environment. Specifically, HCC pointed to instances during Anderson's deposition in which she stated that Bradford's conduct did not affect her job performance or the quality of her work. Anderson acknowledged suffering from physical symptoms such as headaches and stomachaches during the period that she worked for Bradford, but Anderson testified that this was due to Bradford's being a "demanding" boss in general. HCC argued that Bradford's conduct was not "severe or pervasive" enough to constitute a hostile work environment.

With respect to Anderson's retaliation claim, HCC argued that Anderson failed to exhaust her administrative remedies because she did not allege any facts to support a retaliation claim in her charge to the EEOC. HCC also argued that Anderson could not establish a prima facie case of retaliation because she could not present evidence that she had suffered an adverse employment action as a result of engaging in a protected activity.

Bradford also filed a combined plea to the jurisdiction, no-evidence summary judgment motion, and traditional summary judgment motion. She argued that the trial court lacked subject matter jurisdiction over her because Anderson failed to name her as a specific respondent in her charge to the EEOC, and thus Bradford did not have notice of the complaint against her. Bradford also argued that Anderson's claim against her failed because Bradford, as a supervisor, was not an "employer" and thus could not be held personally liable to Anderson under the TCHRA. Bradford further contended that, because Anderson's claim against her was not meritorious, the trial court ought to award her attorney's fees pursuant to Labor Code section 21.259.

In response, Anderson contended that the TCHRA waived HCC's governmental immunity because she pleaded facts that stated a claim under the statute. Anderson attached as summary judgment evidence the report of the OIE, which made findings that Bradford engaged in "discrimination and harassment"

7

when she used a racial slur and instituted separate dress codes for the male and female employees in her office, and Dr. Procarello's acknowledgment of the OIE report and findings. She contended that this evidence raised a fact issue on her claims. Anderson also argued that she named Bradford as her supervisor in the EEOC charge, which sufficiently identified Bradford such that the trial court had subject matter jurisdiction over her claim against Bradford.

The trial court granted HCC's and Bradford's pleas to the jurisdiction and traditional and no-evidence summary judgment motions in separate orders on October 4, 2013. Bradford then moved the trial court for entry of $42,523.33 in attorney's fees and $1,526.07 in court costs against Anderson. Bradford attached an affidavit from her counsel, detailed billing records, and invoices demonstrating the amount of costs and fees incurred. Anderson moved for a new trial on November 4, 2013, but she did not challenge the evidence that Bradford presented in her motion for entry of attorney's fees and costs.

On December 31, 2013, the trial court granted Bradford's motion for entry of costs and attorney's fees, awarding Bradford a total of $44,049.40. The order stated, "This is a final and appealable judgment that disposes of all pending claims and parties." In her notice of appeal filed on January 17, 2014, Anderson stated

that she was appealing the October 4, 2013 orders. She did not refer to the trial court's December 31, 2013 order.[1]

## Standard of Review

We review de novo the trial court's ruling on a summary judgment motion. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). When a party moves for both traditional and no-evidence summary judgment, we first review the trial court's ruling under the no-evidence standard of review. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the

---

[1] In her brief, Bradford moves to dismiss this case for lack of appellate jurisdiction, arguing that Anderson's notice of appeal stated that she was appealing the October 4, 2013 orders, but that neither of these orders was a final, appealable order, and that, in her notice of appeal, Anderson did not identify the December 31, 2013 final judgment as the order from which she was appealing.

We note that interlocutory orders are merged into the final judgment, which becomes appealable. *See Pine v. Deblieux*, 405 S.W.3d 140, 145 (Tex. App.—Houston [1st Dist.] 2013, no pet.). The October 4, 2013 orders thus became final when the trial court entered its December 31, 2013 final judgment. Although Anderson's notice of appeal identifies only the October 4, 2013 orders as the ones from which she appeals, we note that all of her arguments on appeal stem from those orders.

As the Texas Supreme Court notes, "the right of appeal should not be lost due to procedural technicalities." *See Roccaforte v. Jefferson Cnty.*, 341 S.W.3d 919, 924 (Tex. 2011); *see also* TEX. R. APP. P. 25.1(d)(2) (providing that notice of appeal must "state the date of the judgment or order appealed from"); *Guest v. Dixon*, 195 S.W.3d 687, 688 (Tex. 2006) (per curiam) ("[W]e have repeatedly stressed that procedural rules should be construed and applied so that the right of appeal is not unnecessarily lost to technicalities."). We overrule Bradford's motion to dismiss.

trial court properly granted the no-evidence motion, we do not consider the arguments raised regarding the traditional summary judgment motion. *See id.*

After an adequate time for discovery, a party may move for no-evidence summary judgment on the ground that no evidence exists to support one or more essential elements of a claim on which the adverse party bears the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i); *Chandler v. CSC Applied Techs., LLC*, 376 S.W.3d 802, 813 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). The burden then shifts to the nonmovant to produce evidence raising a genuine issue of material fact on the elements specified in the motion. *See* TEX. R. CIV. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The trial court must grant the motion unless the nonmovant presents more than a scintilla of evidence raising a fact issue on the challenged elements. *Chandler*, 376 S.W.3d at 813; *see also Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam) ("An appellate court reviewing a summary judgment must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented."). To determine if the nonmovant has raised a fact issue, we review the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could do so and disregarding contrary evidence unless reasonable jurors could not. *See Fielding*, 289 S.W.3d at 848 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827

10

(Tex. 2005)). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *See Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2001) (citing *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997)).

To prevail on a traditional summary judgment motion, the movant must establish that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004). When, as here, the trial court's summary judgment does not state the basis for the court's decision, we must uphold the judgment if any of the theories advanced in the motion are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

## Anderson's TCHRA Claims

In her third and fourth issues, Anderson contends that the trial court erroneously rendered summary judgment in favor of HCC and Bradford because she raised a fact issue on each challenged element of her TCHRA claims.

### A. Governing Law

Under the TCHRA, an employer commits an unlawful employment practice if, because of an employee's race or sex, the employer "fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or

11

privileges of employment." TEX. LABOR CODE ANN. § 21.051(1) (Vernon 2006); *Chandler*, 376 S.W.3d at 813. The Texas Legislature patterned the TCHRA after federal law "for the express purpose of carrying out the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." *Elgaghil v. Tarrant Cnty. Junior Coll.*, 45 S.W.3d 133, 139 (Tex. App.—Fort Worth 2000, pet. denied); *see also Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 474 (Tex. 2001) (stating same). When analyzing a claim brought under the TCHRA, we therefore look to state cases as well as to the analogous federal statutes and the cases interpreting those statutes. *Toennies*, 47 S.W.3d at 476; *Chandler*, 376 S.W.3d at 814.

An employee may establish discrimination by either direct evidence of what the employer said or did or by circumstantial evidence of discrimination. *Jespersen v. Sweetwater Ranch Apartments*, 390 S.W.3d 644, 653 (Tex. App.—Dallas 2012, no pet.). If the employee produces direct evidence that discriminatory animus played a role in the employment decision at issue, the burden of persuasion shifts to the employer, who must prove that it would have taken the same action regardless of discriminatory animus. *Id.* (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 252–53, 109 S. Ct. 1775, 1792 (1989)). Direct evidence is evidence that, if believed, "proves the fact of discriminatory animus without inference or presumption." *Id.* If an inference is required for the evidence to be probative as to

the employer's discriminatory animus, the evidence is circumstantial, not direct. *Id.* at 653–54.  Courts have tended to find that insults or slurs against a protected group constitute direct evidence of discrimination.  *Id.* at 654.

In the absence of direct evidence of discrimination, the employee must make a prima facie case of discrimination under the *McDonnell-Douglas* burden-shifting analysis.  *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S. Ct. 1817, 1824–26 (1973)).  To establish a prima facie case of discrimination, the employee must show that (1) she was a member of a protected class; (2) she suffered an adverse employment action; and (3) non-protected class employees were not treated similarly.  *Chandler*, 376 S.W.3d at 814.  Once the employee establishes a prima facie case, the burden of production shifts to the defendant-employer to articulate a legitimate non-discriminatory reason for any allegedly unequal treatment.  *Id.*  After the employer articulates a non-discriminatory reason, the burden shifts back to the employee to prove that the articulated reason is a mere pretext for unlawful discrimination.  *Id.*  Although the burden of production shifts between the parties, the burden of persuasion "remains continuously with the plaintiff."  *Id.* (quoting *Greathouse v. Alvin Indep. Sch. Dist.*, 17 S.W.3d 419, 423 (Tex. App.—Houston [1st Dist.] 2000, no pet.)).

Regardless of whether the plaintiff attempts to prove her case by direct or circumstantial evidence of discrimination, the TCHRA addresses only "ultimate

13

employment decisions"; it does not address "every decision made by employers that arguably might have some tangential effect upon employment decisions." *Winters v. Chubb & Son, Inc.*, 132 S.W.3d 568, 575 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *Elgaghil*, 45 S.W.3d at 142 ("Title VII and [the TCHRA] were designed to address ultimate employment decisions, not every action that occurs in the workplace that makes an employee unhappy."); *see also* TEX. LABOR CODE ANN. § 21.051(1) (providing that employer commits unlawful employment practice if it, on basis of race or sex, "fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment"). Generally, adverse employment decisions involve hiring, granting leave, discharging, promoting, and compensating employees. *Winters*, 132 S.W.3d at 575; *Elgaghil*, 45 S.W.3d at 143. Adverse employment actions do not include disciplinary filings, supervisor's reprimands, poor performance reviews, hostility from fellow employees, verbal threats to fire, criticism of the employee's work, or negative employment evaluations. *See Winters*, 132 S.W.3d at 575; *Elgaghil*, 45 S.W.3d at 143; *see also Navy v. Coll. of the Mainland*, 407 S.W.3d 893, 899 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (stating same).

## B. Race and Gender Discrimination Claims

Anderson alleged that Bradford discriminated against her based on her race and her gender by using a racial slur on one occasion, allowing male employees in the office to wear jeans to work at any time but only allowing female employees in the office to do so on Fridays, and making several unsolicited negative comments about Anderson's weight. None of these actions, by themselves, constitute the type of "ultimate employment decisions" that the TCHRA addresses. *See Winters*, 132 S.W.3d at 575 (stating that, generally, "adverse employment decisions" involve hiring, granting leave, discharging, promoting, and compensating employees); *Elgaghil*, 45 S.W.3d at 142–43.

For workplace comments, such as racial slurs, to provide sufficient evidence of discrimination, the comments must be (1) related to the employee's protected class, (2) proximate in time to an adverse employment decision, (3) made by an individual with authority over the employment decision at issue, and (4) related to the employment decision at issue. *See Chandler*, 376 S.W.3d at 816; *Niu v. Revcor Molded Prods. Co.*, 206 S.W.3d 723, 729–30 (Tex. App.—Fort Worth 2006, no pet.). "Stray remarks made in the workplace by non-decision makers, without more, are not evidence of the employer's intent to discriminate." *Elgaghil*, 45 S.W.3d at 140; *see also M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 25 (Tex. 2000) (per curiam) ("Stray remarks, remote in time from

Willrich's termination, and not made by anyone directly connected with the RIF decisions, are not enough to raise a fact question about whether UTMDA's reason for terminating Willrich was pretextual.").

The summary judgment evidence, taken in the light most favorable to Anderson, reflects that Bradford used a racial slur regarding Anderson in March 2011. Anderson does not, however, identify an adverse employment action that occurred proximately in time to Bradford's use of a racial slur, nor did she present any summary judgment evidence that the comment related to an adverse employment decision. *See Chandler*, 376 S.W.3d at 816–17 (holding that fellow employees' use of race-based derogatory nickname concerning plaintiff did not raise fact issue on pretext element of race-discrimination claim when plaintiff presented no evidence that comments were made close in time to adverse action, that fellow employees had any authority or influence over adverse action, or that comments related to adverse action).

Anderson also alleged that HCC discriminated against her when she "applied for at least three job openings with higher salaries at HCC, for which she was the most qualified applicant, and was rejected for each position." To establish a prima facie case of discrimination based on the employer's failure to promote, the employee must show that (1) she is a member of a protected class; (2) she sought and was qualified for an available employment position; (3) despite her

16

qualifications, the employee was not selected for the position; and (4) the employer selected someone not in the employee's protected class or continued to seek applicants with the employee's qualifications. *Elgaghil*, 45 S.W.3d at 139. Anderson admitted during her deposition that she did not know the names of the individuals whom HCC did hire, she did not know their qualifications, and she did not know their races or their genders. Anderson did not present any summary judgment evidence demonstrating that HCC filled the positions for which she had applied with individuals who were not part of her protected class. Thus, Anderson did not raise a fact issue on her allegation that HCC discriminated against her by failing to promote her on three occasions. *See id.*

Anderson also alleged that Bradford "reduced [her] job responsibilities and reassigned her to menial work, substantially beneath [her] stated duties and responsibilities as an Office Manager." Anderson did not present any summary judgment evidence supporting this allegation. Instead, she testified in her deposition that her salary has periodically increased while she has been working at HCC and that her benefits have never decreased. Thus, to the extent she contends that HCC discriminated against her on this basis, we conclude that the trial court properly granted summary judgment on this ground in favor of HCC.

Finally, Anderson argues that she raised a fact issue on her discrimination claims by attaching the report and findings of the OIE investigation into her

complaints against Bradford, as the report concluded that evidence supported a finding that Bradford violated HCC's "discrimination and harassment" policy. This report, which reflected that Bradford used a racial slur, imposed a different dress code for male and female employees, and made gender-based comments, does not, however, raise a fact issue that HCC discriminated against Anderson with respect to an ultimate employment decision. *See Winters*, 132 S.W.3d at 575; *Elgaghil*, 45 S.W.3d at 142–43.

We therefore conclude that Anderson failed to raise a fact issue on her race and gender discrimination claims. We hold that the trial court properly rendered summary judgment in favor of HCC on these claims.

### C. Hostile Work Environment Claim

A hostile work environment claim "entails ongoing harassment, based on the plaintiff's protected characteristic, so sufficiently severe or pervasive that it has altered the conditions of employment and created an abusive working environment." *Bartosh v. Sam Houston State Univ.*, 259 S.W.3d 317, 324 (Tex. App.—Texarkana 2008, pet. denied) (citing *Meritor Savs. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S. Ct. 2399, 2405 (1986)). The elements of a prima facie case of hostile work environment are: (1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based on the protected characteristic; (4) the harassment

18

complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Nairn v. Killeen Indep. Sch. Dist.*, 366 S.W.3d 229, 245 (Tex. App.—El Paso 2012, no pet.) (citing *Bartosh*, 259 S.W.3d at 324 n.14). An employee complaining of harassment by a supervisor need only show the first four elements. *Id.* In determining whether a hostile work environment exists, courts look to all of the circumstances, including the frequency of the discriminatory conduct and whether it unreasonably interfered with the employee's work performance. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 806 (Tex. 2010) (stating such in sexual-harassment claim).

In its summary judgment motion, HCC argued that the trial court should dismiss Anderson's hostile work environment claim because Anderson admitted in her deposition that "the alleged harassment did not affect her job performance," any allegedly discriminatory conduct by Bradford was "far too infrequent to constitute actionable harassment," and the alleged incidents of harassment were not "sufficiently severe as a matter of law."

On appeal, Anderson cites the Eighth Circuit's decision on rehearing in *Jackson v. Flint Ink North American Corp.*, 382 F.3d 869 (8th Cir. 2004) ("*Jackson II*"), for the proposition that Bradford's use of a racial slur towards her was hostile and discriminatory. In *Jackson*, Jackson's managers had referred to

19

him using racially-derogatory remarks on at least two occasions, his co-workers had made racially-offensive comments on at least four other occasions, and one of his co-workers had written Jackson's name in the workplace shower and drawn an arrow between Jackson's name and a burning cross and KKK sign. *See Jackson v. Flint Ink N. Am. Corp.*, 370 F.3d 791, 793–94 (8th Cir. 2004) ("*Jackson I*"), *vacated on rehearing by Jackson II*, 382 F.3d 869 (8th Cir. 2004). On rehearing, the Eighth Circuit concluded that "an objective observer would regard this combination of figures as a threat of serious bodily harm if not death to Mr. Jackson; and when this threat is combined with all of the other incidents that Mr. Jackson complained of," Jackson presented sufficient evidence to raise a fact issue on his hostile work environment claim. *Jackson II*, 382 F.3d at 870. The court stated, "[A]n objective observer in Mr. Jackson's shoes would be justified in reacting to his situation in a way that would affect a term or condition of his employment." *Id.*

In this case, however, Anderson presented evidence that Bradford used a racial slur to refer to her on one occasion, and it was not accompanied by any threats of injury. Anderson did not allege nor did she produce any evidence that Bradford ever repeated this slur. She did produce evidence that Bradford made comments about her weight and appearance on several occasions, and she testified in her deposition that she saw at least two doctors for migraines and stomach pains,

20

which she attributed to stress caused by working for Bradford, but she also testified that Bradford was a "demanding" boss in general. She did not testify that Bradford's gender-based comments caused her environment to be stressful, and she presented no evidence that her physical symptoms were proximate in time to any of Bradford's race or gender-based comments. Anderson also testified that Bradford's conduct did not affect her ability to perform her work or the quality of her work.

To succeed on a hostile work environment claim, the plaintiff must demonstrate "ongoing harassment" based on the protected characteristic, such as race or gender, that is "so sufficiently severe or pervasive that it has altered the conditions of employment and created an abusive working environment." *Bartosh*, 259 S.W.3d at 324; *see also Waffle House*, 313 S.W.3d at 806 (noting that courts look to all circumstances, including frequency of discriminatory conduct and whether conduct unreasonably interfered with work performance). HCC challenged the severe and pervasive nature of Bradford's race and gender-based comments to Anderson, and Anderson's evidence does not raise a fact issue that Bradford's conduct was "severe or pervasive" enough that it "altered the conditions of employment and created an abusive working environment." *See Bartosh*, 259 S.W.3d at 324. We therefore conclude that the trial court properly

rendered summary judgment in favor of HCC on Anderson's hostile work environment claim.

### D. Retaliation Claim

The TCHRA also prohibits an employer from retaliating against an employee for engaging in certain protected activities. TEX. LABOR CODE ANN. § 21.055 (Vernon 2006). Protected activities consist of (1) opposing a discriminatory practice; (2) making or filing a charge; (3) filing a complaint; or (4) testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing. *Id.*; *Chandler*, 376 S.W.3d at 822. To prevail in a retaliation case under this section, the employee must first establish a prima facie case showing that: (1) she engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action. *Chandler*, 376 S.W.3d at 822; *Hernandez v. Grey Wolf Drilling, L.P.*, 350 S.W.3d 281, 286 (Tex. App.—San Antonio 2011, no pet.). If the employee establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory purpose for the adverse employment action. *Chandler*, 376 S.W.3d at 822–23; *Hernandez*, 350 S.W.3d at 286. "[A]n employee's subjective beliefs of retaliation are merely conclusions and do not raise a fact issue precluding summary judgment . . . ." *Chandler*, 376 S.W.3d at 823.

An employee asserting a retaliation claim must establish that, in the absence of her protected activity, the employer's prohibited conduct would not have occurred when it did. *Id.* (citing *Herbert v. City of Forest Hill*, 189 S.W.3d 369, 377 (Tex. App.—Fort Worth 2006, no pet.)). The employee must therefore establish a "but for" causal nexus between the protected activity and the prohibited conduct. *Id.* "[A]ctionable retaliation exists when an employer makes an adverse employment decision against an employee who voices opposition to conduct made unlawful under the [T]CHRA, regardless of whether the employee has already filed a formal complaint with the Commission." *City of Waco v. Lopez*, 259 S.W.3d 147, 152 (Tex. 2008). A challenged action constitutes an adverse employment action if "a reasonable employee would have found the challenged action materially adverse, meaning that it could well have dissuaded a reasonable employee from making or supporting a charge of discrimination." *Brewer v. Coll. of the Mainland*, 441 S.W.3d 723, 729 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *Niu*, 206 S.W.3d at 731 ("An action must be 'materially adverse' because it is important to separate significant from trivial harms. The action is judged from the standpoint of a reasonable employee because the standard for judging harm must be objective. The standard is general because the significance of any given act of retaliation will often depend upon the particular circumstances; '[c]ontext

23

matters.'") (quoting *Burlington N. & Santa Fe. Ry. Co. v. White*, 548 U.S. 53, 68–69, 126 S. Ct. 2405, 2415 (2006)).

Anderson does not identify the specific action of hers that, she contends, constitutes a "protected activity" under the TCHRA. However, HCC acknowledges that Anderson's filing of a complaint with the OIE and a charge with the EEOC both constitute "protected activities." *See* TEX. LABOR CODE ANN. § 21.055 (listing "protected activities"). To the extent that these protected activities form the basis of Anderson's retaliation claim, we note that, to survive summary judgment, Anderson also needed to raise a fact issue that (1) an adverse employment action occurred and (2) a causal link existed between the protected activity and the adverse action. *See Chandler*, 376 S.W.3d at 822. Anderson presented no summary judgment evidence that an adverse employment action occurred as a result of her complaint to the OIE and her EEOC charge. She testified that she still works at HCC and that her salary and benefits have not decreased, and she has not applied and been turned down for a promotion since she engaged in the protected activities. Anderson has not identified a "materially adverse" employment action as a result of her engaging in protected activities. *See Brewer*, 441 S.W.3d at 729; *Niu*, 206 S.W.3d at 731. We therefore conclude that the trial court properly granted summary judgment on Anderson's retaliation claim.

We hold that the trial court did not err in rendering summary judgment in favor of HCC on Anderson's TCHRA claims.[2]

### E. Bradford's Liability in Her Individual Capacity

In her plea to the jurisdiction and her motions for summary judgment, Bradford argued that the trial court should dismiss Anderson's claims against her because, as Anderson's supervisor, she could not be held liable in her individual capacity under the TCHRA. We agree.

To recover under the TCHRA, a plaintiff must prove that the defendant falls within the statutory definition of "employer." *Miles v. Lee Anderson Co.*, 339 S.W.3d 738, 742 (Tex. App.—Houston [1st Dist.] 2011, no pet.). The Labor Code defines "employer," for the purposes of Anderson's claim, as "a county, municipality, state agency, or state instrumentality, regardless of the number of individuals employed." *See* TEX. LABOR CODE ANN. § 21.002(8)(D) (Vernon Supp. 2014); *id.* § 21.002(14)(C) (defining "state agency" as including "an

---

[2] "In a suit against a governmental employer, the prima facie case [for a TCHRA claim] implicates both the merits of the claim *and* the court's jurisdiction because of the doctrine of sovereign immunity." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635–36 (Tex. 2012) (emphasis in original). The TCHRA "clearly and unambiguously waives immunity for suits brought against school districts under the TCHRA," but the Legislature waived immunity "only for those suits where the plaintiff actually alleges a violation of the TCHRA by pleading facts that state a claim thereunder." *Id.* at 636. As we have held, Anderson cannot establish a prima facie case on her TCHRA claims. Thus, the TCHRA does not waive HCC's governmental immunity, and the trial court properly granted HCC's plea to the jurisdiction. We therefore overrule Anderson's first issue.

institution of higher education as defined by Section 61.003, Education Code"). "It is well established in Texas that an individual cannot be held personally liable under the TCHRA." *Winters*, 132 S.W.3d at 580; *Jenkins v. Guardian Indus. Corp.*, 16 S.W.3d 431, 439 (Tex. App.—Waco 2000, pet. denied) ("[S]upervisors and managers are not liable in their individual capacities for alleged acts of discrimination under the TCHRA."). "[U]nder the express terms of the [TCHRA], *employers* may be liable for an unlawful employment practice. The Act does not create a cause of action against supervisors or individual employees." *City of Austin v. Gifford*, 824 S.W.2d 735, 742 (Tex. App.—Austin 1992, no writ) (emphasis in original).

Here, only HCC meets the statutory definition of "employer"; Bradford, in her individual capacity, does not. Thus, Bradford, as Anderson's former supervisor, cannot be held liable in her individual capacity under the TCHRA. *See Winters*, 132 S.W.3d at 580; *Jenkins*, 16 S.W.3d at 439; *Gifford*, 824 S.W.2d at 742. We therefore hold that the trial court properly rendered summary judgment in favor of Bradford on Anderson's TCHRA claims.[3]

We overrule Anderson's third and fourth issues.

---

[3] Because we hold that Anderson could not hold Bradford liable in her individual capacity under the TCHRA, we need not address Anderson's second issue concerning whether the trial court properly granted Bradford's plea to the jurisdiction because Anderson named Bradford as a respondent in her EEOC charge.

## Attorney's Fees

In her fifth issue, Anderson contends that the trial court erred in awarding Bradford her attorney's fees because Bradford "should not have been adjudged as the prevailing part[y] in this cause of action and therefore would not be entitled to attorney's fee[s]." She also contends, without providing supporting argument or authorities, that "[t]he amount of attorney's fees awarded is excessive and unreasonable."

Labor Code section 21.259(a) provides, "In a proceeding under this chapter, a court may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." TEX. LABOR CODE ANN. § 21.259(a) (Vernon 2006). We review the trial court's award of attorney's fees under this section for an abuse of discretion. *See Winters*, 132 S.W.3d at 580. The trial court may award attorney's fees to a prevailing defendant in a TCHRA action "provided the plaintiff's claims were frivolous, meritless, or unreasonable, or the plaintiff continued to litigate after it became clear that his claim was frivolous." *Elgaghil*, 45 S.W.3d at 144–45; *see also Winters*, 132 S.W.3d at 580 (citing *Elgaghil* with approval). In *Winters*, which involved an attorney's fees award to the supervisory defendant, the Fourteenth Court of Appeals noted that "[i]t is well established in Texas that an individual cannot be held personally liable under the TCHRA"; it held that because the employee's discrimination suit against his supervisor "was without merit," the

27

trial court did not abuse its discretion in awarding attorney's fees to the supervisor. 132 S.W.3d at 580–81.

Here, the trial court awarded attorney's fees solely to Bradford, not to HCC. As we have already held, Anderson cannot maintain a TCHRA claim against Bradford in her individual capacity, and the law is "well established" on this point. *See id.* at 580. We therefore hold, as our sister court did in *Winters*, that because Anderson's suit against Bradford was without merit, the trial court did not abuse its discretion in awarding Bradford attorney's fees. *See id.* at 580–81.

Anderson also contends on appeal that the amount of attorney's fees awarded to Bradford "is excessive and unreasonable." This, however, is the extent of Anderson's argument on this point. She does not provide any argument other than this conclusory statement, and she cites no authorities to support her contention. We therefore conclude that, to the extent she challenges the trial court's award of attorney's fees to Bradford on excessiveness grounds, Anderson has waived this point for failure to adequately brief it. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *Elgaghil*, 45 S.W.3d at 145 (holding that employee failed to adequately brief challenge to attorney's fees award to employer when employee presented no explanation on appeal for why trial court abused its discretion in awarding attorney's fees aside from

conclusory statement that he had "established through his brief and evidence that his case was not frivolous, unreasonable, or vexatious as a matter of law").

We overrule Anderson's fifth issue.

## Conclusion

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Brown.