**REVERSE and REMAND and Opinion Filed February 6, 2023**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-21-01018-CV

### NICOLE HARRIS, Appellant
### V.
### FOSSIL GROUP, INC., Appellee

**On Appeal from the 429th Judicial District Court
Collin County, Texas
Trial Court Cause No. 429-00630-2020**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Nowell, and Wright[1]
Opinion by Justice Nowell

Nicole Harris was employed by Fossil Group, Inc. After she resigned, she sued Fossil for violations of the Texas Commission on Human Rights Act (TCHRA). Fossil filed a hybrid no evidence and traditional motion for summary judgment, which the trial court granted. On appeal, Harris argues the trial court erred by granting summary judgment in favor of Fossil. We reverse the trial court's order granting Fossil's motion for summary judgment and remand for further proceedings.

---

[1] The Hon. Carolyn Wright, Justice, Assigned.

BACKGROUND

Fossil hired Harris in November 2018 to work as a temporary, seasonal employee in its store at the Stonebriar Centre, a shopping mall. Leland Brown, an assistant manager, interviewed Harris for the seasonal position because Carey Zaborowicz, the store manager, was out of town. Harris understood the seasonal job would end in January 2019, but she hoped Fossil would offer a regular sales position to her at the end of the season.

While she was employed by Fossil, Harris and Brown exchanged messages on Instagram. In December 2018, Brown sent a sexually explicit video, naked pictures, and sexually explicit messages to Harris. Brown testified he thought his videos and pictures were "something she might like." After Brown sent the video, Harris verbally told him to stop.

Brown repeatedly made comments indicating he would like to have a sexual relationship with Harris. Brown testified that, in these messages, he told Harris "things I liked about her pictures and then sexual things I wanted to do." He left comments on Harris's Instagram that she looked good "[a]nd at one point I do remember I said I wanted to taste her." Brown also reposted some of Harris's pictures with comments and emojis such as fire symbols and devil faces.

After Fossil hired Harris as a regular sales associate in January 2019, Brown continued messaging Harris and commenting on her photos on Instagram. At some point, Harris blocked Brown on Instagram. Brown asked her several times why she

blocked him. She subsequently un-blocked him "[b]ecause he was pressuring me. So, like I said, I didn't understand if I - - I didn't know that he didn't have the right to fire me or else - - . . . I would have kept him [blocked]." She also testified she unblocked Brown because "I didn't know . . . if he could say something to someone to get me fired, for me to lose my job. So I was worried about not having a job." Harris testified she told Brown that she was unblocking him for this reason. Brown continued sending messages to her via Instagram.

After she told Brown she was unblocking him, Harris noticed her work schedule changed; her schedule became "on call." She testified that every time she called to see if she had a shift, Brown would tell her that she had the day or the night off. She testified: "I took that as him messing with, like, my money and my job." Harris testified she did not know who made the store schedule, but she also testified Brown or the store manager made the schedule for sales associates. On several occasions via Instagram, Harris asked Brown about her schedule, including the hours she might be working on a particular day, and Brown replied.

Harris testified that when she was at work, Brown "was always pouncing himself on me and getting closer to me in the store." Brown would stand close to her and rub against her. She explained: "he would always come and brush up against me, and - - literally feeling the back of him and feeling his personal belongings, his area, I didn't - - I just didn't feel safe." Brown took pictures of her from behind. He also asked her out for drinks and repeatedly asked her to bring alcohol to the store

when he was working, which she did not do. Brown followed Harris to her car "pretty much each night that I worked there and nighttime [sic] closing with him." Harris was clear that Brown never "walked" her to her car. Because Brown followed her to her car, Harris's mom began picking her up from work.

On Thursday, May 2, 2019, Harris sent a resignation email stating:

> I'm having trouble with my schedule and my jobs putting everything together. I'm very sorry to do this but I need to make Saturday my last day with the team. I'm getting exhausted and putting a lot of stress on myself trying to juggle 3 jobs and finish school to graduate.

Harris testified no one at Fossil terminated her employment and no one took any adverse employment action against her. At the time she resigned, she had not told her store manager about Brown's behavior, but she told another sales associate, K.K., she was resigning because of Brown. After Harris resigned, she never had contact with Brown again.

Fossil became aware that Brown was sexually harassing K.K.; Zaborowicz contacted Harris on May 11 as part of her investigation into K.K.'s allegations against Brown. Harris met with Zaborowicz on May 12; this conversation was the first time Harris told Zaborowicz about the messages and video Brown sent to her. Believing Brown had violated Fossil's sexual harassment policies, Zaborowicz reported the incidents to Human Resources. Fossil terminated Brown's employment.

After receiving the sexually explicit video from Brown, Harris began having nightmares about "the situation with me being sexually harassed." Experiencing

anxiety and a "lack of trust" with other people, she stopped socializing with friends. She "didn't feel comfortable around anyone." She testified about a male friend with whom she stopped spending time because she "didn't trust any men at that time. I stopped hanging out with men in general." Instead, she wanted to be alone. While working for Fossil, Harris began seeing a mental health provider because she was scared, felt unsafe, and needed someone with whom to discuss the situation.

LAW & ANALYSIS

On appeal, Harris argues the trial court erred by granting Fossil's motion for summary judgment.

## A. Summary Judgment Standard

To obtain a traditional summary judgment, a defendant must conclusively disprove an element of the plaintiff's claim or conclusively prove every element of an affirmative defense. *Alexander v. Wilmington Sav. Fund Soc.*, 555 S.W.3d 297, 299 (Tex. App.—Dallas 2018, no pet.). When seeking summary judgment, the movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c). When deciding whether a disputed material fact issue exists precluding summary judgment, evidence favorable to the nonmovant is taken as true and every reasonable inference must be indulged in favor of the nonmovant. *Sandberg v. STMicroelectronics, Inc.*, 600 S.W.3d 511, 521 (Tex. App.—Dallas 2020, pet.

denied). We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Id.*

We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. *Id.* Thus, we must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *Id.* When analyzing a no-evidence summary judgment, we consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the movant. *Id.* A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *Id.* "More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions." *Id.* "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id.*

### B.    TCHRA

Under the TCHRA and as is relevant to this case, an employer commits an unlawful employment practice if, because of sex, the employer "fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment." TEX. LAB. CODE § 21.051(1). One of the general purposes of the TCHRA is to "provide for the execution of the policies of Title VII

of the Civil Rights Act of 1964 and its subsequent amendments (42 U.S.C. Section 2000e et seq.)." *Id.* § 21.001(1). Accordingly, although the Texas Supreme Court considers the TCHRA's plain language and its own precedent when interpreting the TCHRA, the court does look to federal law for guidance in situations where the TCHRA and Title VII contain analogous statutory language. *Tarrant Cnty. Coll. Dist. v. Sims*, 621 S.W.3d 323, 328 (Tex. App.—Dallas 2021, no pet.) (citing *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 505 (Tex. 2012)). "Sexual harassment is a recognized cause of action under Title VII and the TCHRA," and when pursuing a sexual harassment claim there are generally two types: quid pro quo and hostile work environment. *B.C. v. Steak N Shake Operations, Inc.*, 512 S.W.3d 276, 279 (Tex. 2017). Harris's claim relies on the hostile work environment theory.[2]

The elements of a prima facie case of hostile work environment are: (1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based on the protected characteristic; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the

---

[2] Harris's second amended petition alleges Brown's "sexually harassing behavior became so offensive and pervasive it created a hostile work place environment" and Fossil "tolerated [Brown] creating a sexually hostile work environment for female workers for months without taking corrective actions." These allegations give rise to a hostile work environment claim. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 751 (1998) ("Cases based on threats which are carried out are referred to often as *quid pro quo* cases, as distinct from bothersome attentions or sexual remarks that are sufficiently severe or pervasive to create a hostile work environment.").

harassment and failed to take prompt remedial action. *In re Parkland Health & Hosp. Sys. Litig.*, No. 05-17-00670-CV, 2018 WL 2473852, at \*8 (Tex. App.—Dallas June 4, 2018, no pet., orig. proceeding) (citing *Anderson v. Houston Cmty. Coll. Sys.*, 458 S.W.3d 633, 646 (Tex. App.—Houston [1st Dist.] 2015, no pet.)). However, when "the alleged harassment is perpetrated by a supervisor with immediate or successively higher authority, the employee need only satisfy the first four elements set forth above." *Rivas v. Estech Sys., Inc.*, No. 06-20-00058-CV, 2021 WL 2231262, at \*2 (Tex. App.—Texarkana June 3, 2021, no pet.) (mem. op.) (footnote omitted) (quoting *City of Laredo v. Negrete*, No. 04-08-00737-CV, 2010 WL 454921, at \*5 (Tex. App.—San Antonio Feb. 10, 2010, pet. denied) (mem. op.)); *see also In re Parkland Health & Hosp. Sys. Litig.*, 2018 WL 2473852, at \*8 (citing *Anderson*, 458 S.W.3d at 646).

For harassment to affect a term, condition, or privilege of employment, it must be "so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment." *San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 138 (Tex. 2015) (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001) (alteration in original)); *see also Rivas*, 2021 WL 2231262, at \*3. To be actionable, the work "environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). Courts determine whether the environment was abusive

or hostile "by 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* at 787–88 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). A hostile or abusive work environment "can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers." *Harris*, 510 U.S. at 22. "The effect on the employee's psychological well-being is . . . relevant to determining whether the plaintiff actually found the environment abusive." *Id.* at 23. However, "while psychological harm, like any other relevant factor, may be taken into account, no single factor is required." *Id.*

In its no evidence motion, Fossil concedes Harris has evidence to support the first three elements listed above, but it argues she has no evidence to satisfy elements four and five. That is, Fossil asserts Harris has no evidence to show the harassment affected a term, condition, or privilege of employment and Fossil knew or should have known about the harassment and failed to take prompt remedial action. Fossil also argues Brown was Harris's co-worker and not her supervisor.

### C.     Brown's Harassment Affected a Term, Condition, or Privilege of Harris's Employment

Harris was employed by Fossil for approximately six months, and Brown engaged in harassing behavior throughout her employment. In December 2018, Brown sent a sexually explicit video and many sexually explicit messages to her via

social media. Brown continued sending messages and making sexual comments about her photos until she resigned. Harris initially blocked Brown on Instagram but subsequently unblocked him because Brown was pressuring her and she did not know if he could fire her. After she told Brown she was unblocking him, Harris noticed her work schedule changed to "on call." She testified that every time she called to see if she had a shift, Brown told her that she had the day or the night off. She believed Brown was "messing with, like, my money and my job."

When Harris was at work, Brown stood close to her, rubbed his body against hers, and took unsolicited photos of her. Harris felt so threatened when Brown followed her to her car when she left the store at night that her mother began picking her up from work. She started seeing a mental health provider in late 2018 or early 2019 because she felt unsafe, developed a lack of trust in people, and no longer wanted to socialize. Harris had nightmares about being harassed. When Harris resigned from her job at Fossil, she told her co-worker that she was doing so because of Brown's behavior.

Viewing the evidence in the record in the light most favorable to Harris, we conclude Harris produced more than a scintilla of probative evidence raising a genuine issue of material fact that both a reasonable person would find and Harris personally perceived her work environment to be hostile because of Brown's conduct. Accordingly, we conclude there is more than a scintilla of evidence that

Brown's harassment affected a term, condition, or privilege of Harris's employment with Fossil.

### D. Fossil's Knowledge of Harassment

Fossil moved for summary judgment on the ground that it could not be held liable for Brown's harassing conduct because Brown was not Harris's supervisor. Alternatively, Fossil argues there is no evidence it knew or should have known about Brown's conduct. Harris argues the evidence presents a fact issue about whether Brown was her supervisor and whether Fossil knew or should have known about Brown's actions. We need not resolve the parties' dispute about whether Brown was Harris's supervisor; if we assume for purposes of this appeal that Brown was not her supervisor as Fossil argues, Harris presented evidence to raise a fact issue about whether Fossil knew or should have known of the harassment and failed to take prompt remedial action. *See In re Parkland Health & Hosp. Sys. Litig.*, 2018 WL 2473852, at *8.

Fossil required Harris to participate in company training when she started her job. The training included information about Fossil's equal employment opportunity policy, including its policy against harassment. Posters were hung in the back of the store that included a hotline phone number and an email address to report violations of the policy.

Harris testified she used Fossil's anonymous reporting mechanism to send an email or a "statement" reporting Brown's actions while she worked for Fossil, and

she did not receive a response from Fossil.[3] Harris testified: "I would have to go back and look at my emails, but pretty much I explained what was going on. I stated Mr. Brown's full name and I stated my name, what [sic] store number I worked at, when I worked there, and basically what took place." Harris described the email again during her deposition: "That I was getting videos and pictures from Leland Brown. I was getting sexually harassed at the store. And I didn't have no one [sic] to turn to because Leland Brown was my manager, and if I spoke about it, I thought I was going to get fired." She testified she told Fossil that "I was having pictures taken of me in the store. I had video sent to me, pictures sent to me from his household. And also when I came in to work talking about the alcohol and brushing up against me." Fossil took no remedial action after Harris sent the email.

The email that Harris described in her deposition is some evidence that Fossil knew or should have known about Brown's harassing conduct; however, Fossil took no remedial action. Viewing the evidence in the light most favorable to Harris, we conclude there is more than a scintilla of evidence that Fossil knew or should have known of the harassment and failed to take prompt remedial action.

### E. Fossil's Affirmative Defense

In its motion for summary judgment, Fossil also argued it was entitled to summary judgment under the affirmative defense provided by *Faragher v. City of*

---

[3] For various reasons, Fossil does not consider Harris's testimony on this point credible and asks that we disregard it. However, when considering a motion for summary judgment, we must indulge every reasonable inference and resolve every doubt in the non-movant's favor.

*Boca Raton*, 524 U.S. 775 (1998) and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998). Harris argues a fact issue precludes summary judgment on this ground as well.

Under the defense, an employer is not liable for a harassment claim based on a hostile work environment if the following two elements are proven: (1) the employer exercised reasonable care to prevent and correct promptly the harassing behavior, and (2) the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *See City of Waco v. Lopez*, 259 S.W.3d 147, 151 n.3 (Tex. 2008) (recognizing the defense in cases involving TCHRA); *see also Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 806 (Tex. 2010) (listing elements of defense). The second prong recognizes an employee's duty to avoid or mitigate harm. *River Oaks L-M. Inc. v. Vinton-Duarte*, 469 S.W.3d 213, 231 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing *Faragher*, 524 U.S. at 805–06).

If we assume for purposes of this analysis that Fossil met its burden to conclusively prove the first element of its affirmative defense, it did not meet its burden as to the second element. As discussed above, Harris testified she took advantage of Fossil's reporting mechanism and notified Fossil about the harassment; in her communication, she provided her name, Brown's name, the store number, and a description of the harassment. Harris's testimony is more than a scintilla of evidence that she attempted to take advantage of Fossil's preventive or corrective

opportunities. We conclude Fossil did not meet its summary judgment burden to conclusively prove all elements of its affirmative defense.

CONCLUSION

We sustain Harris's sole issue. We reverse the trial court's order granting Fossil's motion for summary judgment and remand this cause for further proceedings.

/Erin A. Nowell/
ERIN A. NOWELL
JUSTICE

211018F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

NICOLE HARRIS, Appellant

No. 05-21-01018-CV        V.

LELAND BROWN AND FOSSIL
GROUP, INC., Appellee

On Appeal from the 429th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 429-00630-
2020.
Opinion delivered by Justice Nowell.
Justices Partida-Kipness and Wright
participating.


In accordance with this Court's opinion of this date, we reverse the trial court's order granting Fossil's motion for summary judgment and remand this cause for further proceedings.

It is **ORDERED** that appellant Nicole Harris recover her costs of this appeal from appellee Fossil Group, Inc.


Judgment entered February 6, 2023.