**Opinion issued April 2, 2024**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-22-00947-CV**

———————————

**THE HARRIS CENTER FOR MENTAL HEALTH AND IDD, Appellant**

**V.**

**DEBORAH MCLEOD, Appellee**

---

**On Appeal from the 189th District Court**
**Harris County, Texas**
**Trial Court Case No. 2019-39250**

---

**MEMORANDUM OPINION**

Deborah McLeod sued her former employer, the Harris Center for Mental Health and IDD ("the Harris Center"), for disability discrimination, retaliation, and failure to accommodate in violation of the Texas Commission on Human Rights Act

("TCHRA"). *See* TEX. LAB. CODE §§ 21.051, 21.055, 21.128(a). The Harris Center asserted governmental immunity from suit and sought dismissal of McLeod's claims in a combined second plea to the jurisdiction and motion for summary judgment, but the trial court denied the combined motion.[1]

In a single issue with several subparts on appeal, the Harris Center contends that the trial court erred by denying its combined motion. The Harris Center argues that (1) it is a governmental unit entitled to assert immunity; and (2) it retains its immunity under the TCHRA because McLeod did not establish a prima facie case for any of her claims or raise a fact question on whether the Harris Center's proffered reasons for its challenged actions were pretextual. We reverse and render judgment.

## Background

The Harris Center provides mental health and intellectual disability services to eligible Harris County residents. McLeod worked for the Harris Center for nearly seventeen years before her employment was terminated in January 2018.

In August 2016, McLeod accepted a position as a Licensed Practitioner for the Healing Arts ("LPHA") at the Harris Center's northwest clinic. As an LPHA, McLeod was responsible for providing clinical mental health services to patients,

---

[1] This is the second interlocutory appeal filed by the Harris Center raising its governmental immunity from McLeod's claims. *See Harris Ctr. for Mental Health & IDD v. McLeod*, No. 01-20-00838-CV, 2022 WL 1632173 (Tex. App.—Houston [1st Dist.] May 24, 2022, no pet.) (mem. op.).

including intake, case management, cognitive behavioral therapy to reduce or eliminate symptoms of severe and persistent mental illness, and crisis intervention services. The LPHA role also required McLeod to timely complete paperwork so clients could receive appropriate mental health services. Mary Jane McLaggan became McLeod's supervisor when McLeod accepted the LPHA position, and McLeod's complaints in this lawsuit focus on McLaggan's conduct.

In February 2017, McLeod submitted to the Harris Center a note from a registered dietitian nutritionist stating that McLeod was not receiving a consistent lunch schedule at work, which was "negatively impacting her overall health and wellness goals[.]" The note concluded that it would be "in the best interest of [McLeod's] health to be able to have at least a 30 minute lunch around the same time (give or take 1–2 hours) on a daily basis while working." In her deposition after she filed suit against the Harris Center, McLeod disclosed for the first time that she had binge eating disorder. Shortly after McLeod submitted the note, the Harris Center altered employees' lunch schedules to provide more consistent lunch breaks, but McLeod disputes that her lunch breaks became more consistent.

Around the same time, McLaggan issued McLeod a written reprimand for discussing non-work matters with coworkers; failing to check the client schedule, which caused one client to wait an extended time for an appointment with McLeod; and behaving unprofessionally and inappropriately with a coworker who was

conducting a training session for McLeod by stating that she did not need the training. McLaggan prohibited McLeod from discussing non-work matters with coworkers during business hours, taking extended lunch breaks without permission, and speaking disrespectfully to coworkers. McLaggan also required McLeod to regularly check and update the client schedule.

In early March 2017, McLeod filed an internal grievance with the Harris Center. McLeod complained that she felt "singled out for harassment" in the reprimand because she was the only employee who was prohibited from discussing non-work matters with coworkers. McLeod also complained that McLaggan had "repeatedly spoken to [her] in an impatient, derogatory and disrespectful manner in front of [McLeod's] peers." McLeod denied taking extended lunch breaks, causing clients to wait extended times for appointments, or speaking inappropriately to her coworker. McLeod stated that the "work environment has come to feel hostile, based on [McLaggan's] behavior towards" McLeod. McLeod stated that she had been treated by a psychologist to address the issues she was having with McLaggan, which had caused her work-related stress, anxiety, and depression. As a resolution, McLeod suggested that McLaggan attend training courses concerning how she speaks to McLeod and to generally treat McLeod better.

The Harris Center conducted two investigations into McLeod's complaints. The investigations determined that the restriction on McLeod's social interactions

was "draconian," but otherwise there was no evidence supporting McLeod's complaints. The second investigation, conducted by a senior manager, determined that if problems arose in the future, McLeod should immediately report the issue to senior management with at least two managers present.

In May 2017, McLeod received a second written reprimand from McLaggan for continuing to keep clients waiting extended time periods for their appointments—sometimes up to two hours—since McLeod's previous reprimand. The reprimand required McLeod to follow proper procedures for taking leave time, regularly check and update the schedule, and attend monthly supervision sessions with McLaggan.

McLeod took a medical leave of absence from June 8, 2017, to July 10, 2017. On the day she returned to work, McLeod submitted a request for accommodation. In the request, McLeod disclosed for the first time that she suffered from major depressive disorder and anxiety. The request stated that McLeod's "symptoms have been triggered and greatly exacerbated since [she] switched positions almost a year ago and began working under [her] current supervisor Jane McLaggan." The request further stated that McLaggan regularly spoke to McLeod in a derogatory, disrespectful, and inappropriate manner, and McLeod "felt harassed by her." McLeod requested a reasonable accommodation, and she suggested "perhaps reassignment."

McLeod attached a note from her treating psychologist stating that she had treated McLeod with psychotherapy for nearly eighteen years, and McLeod's "distress" had increased since McLaggan became her supervisor. The psychologist suggested that if McLeod requested reassignment, the request should be granted "to aid her in maintaining good mental health while continuing to be a productive employee."

The Harris Center's ADA committee reviewed McLeod's request for accommodation and approved it. The committee recommended transferring McLeod to the same LPHA position at a different clinic. A committee member emailed McLeod and offered her a reassignment "to a different supervisor with the same job duties" she currently held. But McLeod declined the offer and requested to stay in her current position. McLeod explained that since she had returned from medical leave, McLaggan was treating her respectfully. McLeod reserved the right to re-request accommodation if the circumstances changed, but the appellate record does not indicate that McLeod made a subsequent request for accommodation.

In August 2017, shortly after McLeod declined the Harris Center's accommodation offer, McLaggan issued McLeod a third written reprimand. This reprimand alleged that McLeod "continued to demonstrate an inability to improve" on the time management and professionalism concerns raised in the prior reprimands. The reprimand detailed several instances in which McLeod had been

late arriving to work or returning from a lunch break, causing clients to wait extended times for their appointments. The reprimand also listed several instances in which clients complained that McLeod had acted unprofessionally. The reprimand addressed issues that arose before McLeod took the medical leave of absence and requested the accommodation for her major depressive disorder, but the reprimand stated that McLaggan had been unable to meet with McLeod sooner because McLeod was on leave and her request for accommodation was pending.

On October 5, 2017, McLeod filed a formal charge of discrimination and retaliation (the "charge") with the Equal Employment Opportunity Commission and the Texas Workforce Commission. In the charge, McLeod alleged that she had submitted a request for accommodation concerning her lunch schedule, but the Harris Center "did not perform any good faith analysis regarding this request to [McLeod's] understanding." McLeod also alleged that "McLaggan spoke to [her] in an impatient, derogatory, and disrespectful manner in front of [her] peers" and was "rude and hostile to [McLeod] on a regular basis causing [McLeod] to work with a psychologist to address these issues."

In the charge, McLeod conceded that the Harris Center "offered [her] a proper accommodation" in response to her July 2017 request to accommodate her major depressive disorder. McLeod stated, however, that within days of declining the offer, McLaggan issued her a written reprimand expressly noting that McLaggan waited

to issue it until after McLeod returned from medical leave and her accommodation request had been resolved.

In June 2019, McLeod sued the Harris Center for disability discrimination, retaliation, and failure to accommodate in violation of the TCHRA.[2] *See* TEX. LAB. CODE §§ 21.051, 21.055, 21.128(a). McLeod alleged that the Harris Center "did not perform any good faith analysis" of her request for more consistent lunch breaks, and she was not aware that McLaggan had forwarded this request to the Harris Center. McLeod also alleged that McLaggan spoke to her improperly and was consistently rude and hostile to her, requiring McLeod to receive psychological treatment.

McLeod alleged that she filed an internal complaint concerning McLaggan's behavior, and "[a]lmost immediately thereafter," McLaggan retaliated against her by writing her up and otherwise causing her significant anxiety and stress. McLeod alleged that the Harris Center offered a proper accommodation for her major depressive disorder by authorizing her transfer to another clinic, which she declined.

---

[2]     McLeod's petition does not clearly state her causes of action. In the trial court and on appeal, the Harris Center has construed McLeod's petition as asserting claims of disability discrimination, retaliation, and failure to accommodate under the TCHRA. McLeod has not challenged the Harris Center's construction of her claims, and she has responded only to the challenges concerning her claims of disability discrimination and retaliation. Moreover, McLeod's petition expressly disclaimed any cause of action based on federal law. Accordingly, we construe McLeod's petition as asserting claims for disability discrimination, retaliation, and failure to accommodate under the TCHRA.

But she alleged that McLaggan retaliated against her soon after she declined the accommodation offer by writing her up, and McLaggan waited to write her up until after she returned from medical leave and her accommodation request was resolved. McLeod also alleged that McLaggan intentionally gave her performance tasks that could not be completed within normal work hours in an attempt to provide grounds for the termination of McLeod's employment. McLaggan's retaliatory actions allegedly caused McLeod to go on medical leave a second time before she filed the charge.[3]

The Harris Center filed an answer asserting numerous affirmative defenses, including that it was entitled to governmental immunity from McLeod's lawsuit. The Harris Center also filed an original plea to the jurisdiction raising its immunity from McLeod's claims. The trial court denied the plea, and the Harris Center filed its first interlocutory appeal in this case. A separate panel of this Court held that McLeod did not exhaust her administrative remedies for claims based on the Harris Center's actions after McLeod filed the charge and that the trial court lacked subject-matter jurisdiction over such claims. *See Harris Ctr. for Mental Health & IDD v. McLeod*,

---

[3] McLeod's petition also sought relief based on the Harris Center's actions after she filed the charge, including McLaggan's prohibiting McLeod from staying after work to complete work tasks, placing her on probation, and eventually terminating her employment in January 2018. As discussed below, however, this Court previously rendered judgment dismissing these claims in the Harris Center's first interlocutory appeal. *See id.* at * 6, 9.

No. 01-20-00838-CV, 2022 WL 1632173, at *3–6 (Tex. App.—Houston [1st Dist.] May 24, 2022, no pet.) (mem. op.). The Court therefore reversed the part of the trial court's order denying the Harris Center's plea as to claims based on actions arising after McLeod filed her charge and rendered judgment dismissing those claims. *Id.* at *9. We affirmed the remainder of the trial court's order, however, holding that the Harris Center did not produce any evidence establishing that it was a governmental unit entitled to assert governmental immunity. *Id.*

The Harris Center then filed a second plea to the jurisdiction combined with a motion for summary judgment on both no-evidence and traditional grounds. The Harris Center argued that it was a "community center" established under Health and Safety Code chapter 534, and therefore it was a governmental unit entitled to assert immunity. The Harris Center supported this argument with an affidavit from its general counsel and its bylaws. The Harris Center also argued that it was entitled to immunity because McLeod could not establish a prima facie case for any of her claims or raise a fact issue on whether the Harris Center's non-discriminatory, non-retaliatory reasons for its challenged conduct were pretextual.

McLeod filed a response, but she did not address the challenge to her failure to accommodate claim. Instead, she only addressed her discrimination and retaliation claims. Concerning her discrimination claim, McLeod argued that she was constructively discharged. Although she conceded that she was terminated and did

not actually resign, McLeod argued that a reasonable person facing McLaggan's conduct would have felt compelled to resign.

Concerning her retaliation claim, McLeod argued that she engaged in protected activity by submitting the March 2017 internal grievance against McLaggan, which mentioned her prior request in February 2017 for more consistent lunch breaks, and by submitting the July 2017 request for an accommodation for her major depressive disorder and anxiety. McLeod further argued that she suffered adverse employment actions when McLaggan targeted and harassed her, forbade her from socializing with coworkers, issued her written reprimands, and assigned her unachievable work tasks. Finally, McLeod argued that a causal link existed between her engagement in these protected activities and her experiencing adverse employment actions based on their temporal proximity. McLeod also argued that the Harris Center's proffered reasons for its conduct were a pretext for discrimination and retaliation.

The parties primarily relied on the same summary judgment evidence, which included a transcript of McLeod's deposition; affidavits from McLaggan and another supervisor of McLeod's; the February 2017 nutritionist's note; the March 2017 internal grievance and the Harris Center's responses to it after investigating the grievance; the written reprimands; the July 2017 request for reassignment as a reasonable accommodation for McLeod's major depressive disorder and anxiety; the

Harris Center's approval of the accommodation request, its offer to reassign her to a different clinic, and McLeod's denial of the offer; and the charge.[4]

The trial court denied the Harris Center's combined second plea to the jurisdiction and motion for summary judgment without stating the basis for its ruling. This appeal followed.[5]

## Governmental Immunity Under the TCHRA

The Harris Center contends that the trial court erroneously denied its combined plea to the jurisdiction and motion for summary judgment because McLeod cannot demonstrate a waiver of the Harris Center's governmental immunity. For ease of reference, we refer to the Harris Center's combined motion as a motion for summary judgment.

---

[4] The parties also relied on documents concerning allegations of the Harris Center's actions after McLeod filed the charge. As discussed above, however, these actions are not relevant to this appeal.

[5] Civil Practice and Remedies Code section 51.014(a)(8) provides this Court with jurisdiction over this appeal from the trial court's interlocutory order denying the Harris Center's combined plea to the jurisdiction and motion for summary judgment asserting immunity from suit. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8) (authorizing party to appeal interlocutory order granting or denying plea to jurisdiction filed by governmental unit); *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 549 (Tex. 2019) (stating that section 51.014(a)(8) authorizes interlocutory appeal when trial court denies governmental unit's assertion of governmental immunity, whether asserted by plea to jurisdiction, motion for summary judgment, or otherwise).

## A.    Standard of Review

"[S]overeign immunity protects the State of Texas against lawsuits for damages unless the State consents to be sued." *Gulf Coast Ctr. v. Curry*, 658 S.W.3d 281, 283 (Tex. 2022). Governmental immunity provides similar protection to subdivisions of the State, including "community centers" established under Health and Safety Code section 534.001. TEX. HEALTH & SAFETY CODE § 534.001(a), (b)(3) (defining "community center" to include "a community mental health and intellectual disability center that provides mental health and intellectual disability services"), (c)(1) (providing that "community center" is governmental unit as defined and specified by Texas Tort Claims Act); *Dallas Metrocare Servs. v. Pratt*, 124 S.W.3d 147, 148–49 (Tex. 2003) (per curiam) (concluding that Metrocare, "a local governmental unit" under Health and Safety Code section 534.001(c)(1) that provided mental health services, was entitled to governmental immunity from whistleblower claims); *see also Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004) ("Governmental immunity operates like sovereign immunity to afford similar protection to subdivisions of the State, including counties, cities, and school districts.").

"Governmental immunity has two components: immunity from liability, which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether." *Tooke v. City of Mexia*, 197

S.W.3d 325, 332 (Tex. 2006). Immunity from suit "thus presents a jurisdictional question of whether the State has expressly consented to suit." *Curry*, 658 S.W.3d at 284; *see also Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225 (Tex. 2004) (stating that immunity from suit "defeats a trial court's subject matter jurisdiction"). The plaintiff has the burden to affirmatively demonstrate that the trial court has jurisdiction, which "encompasses the burden of establishing a waiver of sovereign immunity in suits against the government." *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019).

A party may challenge a trial court's subject-matter jurisdiction through various procedural vehicles, including a plea to the jurisdiction or a motion for summary judgment. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018); *see Swanson*, 590 S.W.3d at 550–52 (holding that governmental defendant may assert immunity in no-evidence summary judgment motion). To assert immunity, a governmental defendant may challenge the jurisdictional allegations in the pleadings, the existence of jurisdictional facts, or both. *Tex. Dep't of Transp. v. Lara*, 625 S.W.3d 46, 52 (Tex. 2021). When, as here, the defendant challenges the existence of jurisdictional facts, the court "must move beyond the pleadings and consider evidence." *Id.* (quoting *Clark*, 544 S.W.3d at 770). In doing so, our analysis "mirrors that of a traditional summary judgment." *Id.* (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012)).

We review de novo a trial court's rulings on both a plea to the jurisdiction and a summary judgment motion. *City of Waco v. Lopez*, 259 S.W.3d 147, 150 (Tex. 2008) (plea to jurisdiction); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003) (summary judgment); *Donaldson v. Tex. Dep't of Aging & Disability Servs.*, 495 S.W.3d 421, 431 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (summary judgment). When a party moves for summary judgment on both traditional and no-evidence grounds, we first review the trial court's ruling under the no-evidence standard of review. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 219 (Tex. 2017). We then review any claims that survive no-evidence review under the traditional standard. *Id.* at 219–20; *see Donaldson*, 495 S.W.3d at 432.

After an adequate time for discovery, a party may move for no-evidence summary judgment on the ground that no evidence exists of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. TEX. R. CIV. P. 166a(i). Once raised, the burden shifts to the nonmovant to produce evidence raising a genuine issue of material fact on each element specified in the motion. *Id.*; *Donaldson*, 495 S.W.3d at 432. The trial court must grant the motion unless the nonmovant presents more than a scintilla of evidence raising a fact issue on each challenged element. TEX. R. CIV. P. 166a(i); *Donaldson*, 495 S.W.3d at 432.

To prevail on traditional summary judgment grounds, the movant must establish that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *see also Garcia*, 372 S.W.3d at 635 ("Initially, the defendant carries the burden to meet the summary judgment proof standard for its assertion that the trial court lacks jurisdiction."). If the movant meets its initial summary judgment burden, the burden shifts to the plaintiff to raise a fact question on the jurisdictional issue. *Garcia*, 372 S.W.3d at 635; *see Lara*, 625 S.W.3d at 52 (stating that when governmental defendant challenges existence of jurisdictional facts, analysis mirrors traditional summary judgment, thus requiring plaintiff to raise fact issue on each challenged element of plaintiff's claims).

In sum, because the Harris Center asserted its immunity in a combined plea to the jurisdiction and motion for summary judgment, we must consider whether McLeod met her burden to raise a genuine issue of material fact on each challenged element of her claims. *See Lara*, 625 S.W.3d at 52. In making this determination, we consider the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could do so and disregarding contrary evidence unless reasonable jurors could not. *Zive v. Sandberg*, 644 S.W.3d 169, 173 (Tex. 2022); *Donaldson*, 495 S.W.3d at 432. We must take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor. *Clark*, 544 S.W.3d at 771. When, as here, the trial

court's summary judgment order does not state the basis for the ruling, we must uphold the order if any theory advanced in the motion is meritorious. *Knott*, 128 S.W.3d at 216; *Donaldson*, 495 S.W.3d at 432.

**B.    Whether the Harris Center is a Governmental Unit Entitled to Assert Immunity From Suit**

The Harris Center first contends that it is a "community center" established under Health and Safety Code chapter 534 and entitled to assert immunity. McLeod does not address this argument on appeal.

Only the State and its political subdivisions are authorized to assert immunity from suit. *See Garcia*, 372 S.W.3d at 636 (stating that "immunity deprives a trial court of jurisdiction over lawsuits in which the state or certain governmental units have been sued, unless the state consents to suit"). "Community centers" established under Health and Safety Code section 534.001 are governmental entities entitled to assert immunity. TEX. HEALTH & SAFETY CODE § 534.001(a), (c)(1); *see Pratt*, 124 S.W.3d at 148–49. Section 534.001(b) defines "community center" to include "a community mental health and intellectual disability center that provides mental health and intellectual disability services." TEX. HEALTH & SAFETY CODE § 534.001(b)(3).

To support its contention that it is a governmental unit entitled to assert immunity, the Harris Center relied on an affidavit from its general counsel and its bylaws. The general counsel averred that the Harris County Commissioners Court

established the Harris Center in response to the enactment of the Texas Mental Health and Mental Retardation Act of 1965, and the Harris Center operates as a "community center" under Health and Safety Code chapter 534. The Harris Center's bylaws state that the Harris Center operates "as a community mental health and intellectual disability center that provides mental health and intellectual disability services to persons in Harris County, Texas, in accordance with chapter 534 of the Texas Health and Safety Code" and other applicable law. *See id.* In response to the Harris Center's motion for summary judgment, McLeod did not dispute the Harris Center's status as a governmental unit entitled to assert immunity. The Harris Center's evidence on this issue is thus uncontroverted.

The undisputed evidence conclusively shows that the Harris Center is a "community center" under section 534.001. A "community center" established under section 534.001 to provide community mental health and intellectual disability services is a governmental unit entitled to assert immunity. *See id.* § 534.001(a), (b)(3), (c)(1); *Pratt*, 124 S.W.3d at 148; *Castillo v. Tropical Tex. Ctr. for Mental Health & Mental Retardation*, 962 S.W.2d 622, 625–26 (Tex. App.—Corpus Christi–Edinburg 1997, no pet.) (concluding that entity was entitled to governmental immunity from suit based on uncontroverted affidavit from Commissioner of Texas Department of Mental Health and Mental Retardation recognizing that entity qualified as "community center" under prior version of section 534.001). We

therefore conclude that the Harris Center has established its status as a governmental unit entitled to assert immunity from suit.

**C.  Whether McLeod's TCHRA Claims Waived the Harris Center's Immunity From Suit**

The Harris Center next contends that it is entitled to governmental immunity from each of McLeod's claims of failure to accommodate, disability discrimination, and retaliation.

The Texas Legislature enacted the TCHRA to address discrimination and retaliation in the workplace and "to coordinate and conform with federal anti-discrimination and retaliation laws under Title VII." *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 504 (Tex. 2012); *accord Lara*, 625 S.W.3d at 52, 53, 58 (considering federal law in deciding claims of failure to accommodate, discrimination, and retaliation under TCHRA). When analyzing a TCHRA claim, we consider state cases as well as the analogous federal statutes and the case law interpreting those statutes. *Lara*, 625 S.W.3d at 52; *Anderson v. Houston Cmty. Coll. Sys.*, 458 S.W.3d 633, 643 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

"The TCHRA waives immunity, but only when the plaintiff states a claim for conduct that actually violates the statute." *Lara*, 625 S.W.3d at 52 (quoting *Clark*, 544 S.W.3d at 770); *Garcia*, 372 S.W.3d at 636 ("[T]he Legislature has waived immunity only for those suits where the plaintiff actually alleges a violation of the TCHRA by pleading facts that state a claim thereunder."). To state a claim under the

TCHRA, the plaintiff must "plead the elements of her statutory cause of action—here the basic facts that make up the prima facie case—so that the court can determine whether she has sufficiently alleged a TCHRA violation." *San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 135 (Tex. 2015) (quoting *Garcia*, 372 S.W.3d at 637). The plaintiff must also "strictly satisf[y] the procedural requirements outlined in the TCHRA" to bring suit alleging a violation of the TCHRA against a governmental unit. *Chatha*, 381 S.W.3d at 513–14.

A TCHRA plaintiff may rely on direct or circumstantial evidence. *Tex. Tech Univ. Health Scis. Ctr.-El Paso v. Flores*, 612 S.W.3d 299, 305 (Tex. 2020). When, as here, a plaintiff relies on circumstantial evidence, we follow the burden-shifting framework established by the United States Supreme Court. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973); *Flores*, 612 S.W.3d at 305. Under this framework, (1) the plaintiff must first create a presumption of illegal discrimination or retaliation by establishing a prima facie case; (2) the defendant must then rebut that presumption by establishing a legitimate, nondiscriminatory reason for the employment action; and (3) the plaintiff must then overcome the rebuttal evidence by establishing that the defendant's stated reason is a mere pretext. *Flores*, 612 S.W.3d at 305. But "the burden of persuasion remains at all times with the employee." *Clark*, 544 S.W.3d at 782.

### 1.    Failure to Accommodate Claim

The Harris Center argues that the trial court erred by denying its motion for summary judgment challenging McLeod's failure to accommodate claim because McLeod did not respond to the Harris Center's challenge to this claim in the trial court. McLeod does not respond to these arguments in her appellate brief.

An employer violates the TCHRA if, with an exception not applicable here, the employer "fail[s] or refuse[s] to make a reasonable workplace accommodation to a known physical or mental limitation of an otherwise qualified individual with a disability who is an employee." TEX. LAB. CODE § 21.128(a). The elements of a failure to accommodate claim are: (1) the individual has a disability; (2) the employer had notice of the disability; (3) with a reasonable accommodation, the individual could perform the essential functions of the position; and (4) the employer refused to make the accommodation. *Datar v. Nat'l Oilwell Varco, L.P.*, 518 S.W.3d 467, 474 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). A failure to accommodate claim is similar to but distinct from a claim for disability discrimination. *Compare* TEX. LAB. CODE § 21.051 (disability discrimination) *with id.* § 21.128(a) (failure to accommodate); *see Lara*, 625 S.W.3d at 51 (describing traditional discrimination claim under section 21.051 and failure to accommodate claim under section 21.128 as "two disability-discrimination theories").

In its summary judgment motion, the Harris Center argued that it was entitled to summary judgment on McLeod's failure to accommodate claim because she had no evidence establishing any element of the claim. *See Datar*, 518 S.W.3d at 474. The burden then shifted to McLeod to produce evidence raising a genuine issue of material fact on all elements of her failure to accommodate claim. *See* TEX. R. CIV. P. 166a(i); *Donaldson*, 495 S.W.3d at 432.

McLeod filed a response to the Harris Center's summary judgment motion, but she did not mention or rebut the Harris Center's no-evidence challenge to her failure to accommodate claim. *See* TEX. R. CIV. P. 166a(i); *Donaldson*, 495 S.W.3d at 432. Nor did McLeod point to any evidence raising a fact issue on this claim. Instead, McLeod's prayer expressly requested that "this case be allowed to proceed to the jury on her disability discrimination and retaliation claims." Because McLeod presented no evidence to support her failure to accommodate claim, the trial court was required to grant summary judgment on this claim. *See* TEX. R. CIV. P. 166a(i); *Donaldson*, 495 S.W.3d at 432. We therefore conclude that McLeod did not meet her burden to affirmatively demonstrate a waiver of the Harris Center's immunity from her failure to accommodate claim, and we hold that the trial court erred by denying summary judgment on this claim.[6]

---

[6] Because we conclude that the Harris Center was entitled to summary judgment on this claim on no-evidence grounds, we need not separately consider whether summary judgment was appropriate on traditional grounds. *See Donaldson v. Tex.*

## 2. Disability Discrimination Claim

The Harris Center next argues that the trial court erred by denying summary judgment on McLeod's disability discrimination claim because McLeod did not present prima facie proof of two essential elements: (1) that she was qualified to perform the job, and (2) that she experienced an adverse employment action because of her disability. Because the question whether McLeod experienced an "adverse employment action" is dispositive in our resolution of this claim, we need not address whether she satisfied the remaining challenged elements. *See* TEX. R. APP. P. 47.1.

The TCHRA provides that an employer commits an unlawful employment practice if, because of a disability, the employer "fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment." TEX. LAB. CODE § 21.051(1). The elements of a disability discrimination claim are: (1) the individual has a disability; (2) she is qualified for the job she held; and (3) she was subject to an adverse employment decision because of her disability. *Lara*, 625 S.W.3d at 61; *Deville v. Univ. of Tex. M.D. Anderson*

---

*Dep't of Aging & Disability Servs.*, 495 S.W.3d 421, 432 (Tex. App.—Houston [1st Dist.] 2016, pet. denied); TEX. R. APP. P. 47.1.

*Cancer Ctr.*, 634 S.W.3d 324, 333 (Tex. App.—Houston [1st Dist.] 2021, no pet.); *Donaldson*, 495 S.W.3d at 436.

The TCHRA addresses only "ultimate employment decisions."[7] *Anderson*, 458 S.W.3d at 644 (quoting *Winters v. Chubb & Son, Inc.*, 132 S.W.3d 568, 575 (Tex. App.—Houston [14th Dist.] 2004, no pet.)); *Esparza v. Univ. of Tex. at El Paso*, 471 S.W.3d 903, 909 (Tex. App.—El Paso 2015, no pet.) ("[A]n adverse employment action requires a significant change in employment status."). The statute does not address "every decision made by employers that arguably might have some tangential effect upon employment decisions." *Anderson*, 458 S.W.3d at 644 (quoting *Winters*, 132 S.W.3d at 575); *Elgaghil v. Tarrant Cnty. Junior Coll.*, 45 S.W.3d 133, 142 (Tex. App.—Fort Worth 2000, pet. denied) (stating that TCHRA was "designed to address ultimate employment decisions, not every action that occurs in the workplace that makes an employee unhappy").

---

[7] As this Court recently noted, the Fifth Circuit sitting en banc has recently concluded that limiting Title VII's anti-discrimination provision only to "ultimate employment decisions" was inconsistent with the language of Title VII itself, and the court abandoned this requirement for demonstrating an adverse employment action. *See City of Pasadena v. Poulos*, No. 01-22-00676-CV, 2023 WL 7134974, at *10 n.1 (Tex. App.—Houston [1st Dist.] Oct. 31, 2023, no pet.) (mem. op.) (citing *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 499–502 (5th Cir. 2023) (en banc)). Absent contrary authority from the Texas Supreme Court or this Court sitting en banc, however, we continue to be bound by our prior precedent holding that the TCHRA's anti-discrimination provision applies only to "ultimate employment decisions." *Id.*

Generally, adverse employment actions involve hiring, granting leave, discharging, promoting, and compensating employees. *Anderson*, 458 S.W.3d at 644. Adverse employment actions do not include disciplinary filings, reprimands from a supervisor, poor performance reviews, hostility from fellow employees, verbal threats to fire, criticism of the employee's work, or negative employment evaluations. *Id.*

On appeal, the Harris Center construes McLeod's pleadings as complaining that she was subject to adverse employment actions when McLaggan issued McLeod written reprimands and micromanaged her. The Harris Center argues that these actions are insufficient to constitute adverse employment actions in the context of a TCHRA disability discrimination claim.

In her petition, McLeod made numerous allegations against McLaggan, including that McLaggan spoke to McLeod in an impatient, derogatory, and disrespectful manner; was rude and hostile to her; issued her written reprimands; and gave her unachievable work tasks intended to result in the termination of her employment. The Harris Center specifically moved for no-evidence summary judgment on the adverse employment action element of McLeod's disability discrimination claim. Thus, the burden shifted to McLeod to raise a fact question on this element. *See* TEX. R. CIV. P. 166a(i); *Donaldson*, 495 S.W.3d at 432.

In her summary judgment response, McLeod did not dispute the Harris Center's characterization of her pleadings as complaining only of McLaggan's written reprimands and micromanagement. Nor does McLeod specifically address this argument on appeal. Instead, she argues that she was constructively discharged because McLaggan's conduct would have compelled a reasonable employee to resign. McLeod acknowledges, however, that she did not resign; instead, the Harris Center terminated her employment several months after she filed the charge.

An employee can satisfy the adverse employment action element of a discrimination claim by proving that she was constructively discharged. *Harris Cnty. Hosp. Dist. v. Parker*, 484 S.W.3d 182, 194 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *Winters*, 132 S.W.3d at 575. A constructive discharge occurs when an employer makes working conditions so intolerable that an employee reasonably feels compelled to resign. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 805 (Tex. 2010); *Parker*, 484 S.W.3d at 194; *Winters*, 132 S.W.3d at 575. McLeod focuses on this reasonableness language, arguing that even though she did not resign, McLaggan's conduct would have compelled a reasonable employee to do so.

McLeod's argument is belied by *Green v. Brennan*, in which the United States Supreme Court stated that a Title VII claim of constructive discharge has two elements: "A plaintiff must prove first that he was discriminated against by his employer to the point where a reasonable person in his position would have felt

compelled to resign. But *he must also show that he actually resigned*." *See* 578 U.S. 547, 555 (2016) (emphasis added); *see also Pa. State Police v. Suders*, 542 U.S. 129, 148 (2004) ("A constructive discharge involves both an employee's decision to leave and precipitating conduct[.]"); *Sacks v. Tex. S. Univ.*, 83 F.4th 340, 345 (5th Cir. 2023) (concluding that employee could not bring constructive discharge claim until she actually resigned); *Quality Dialysis, Inc. v. Adams*, No. 13-05-086-CV, 2006 WL 1553353, at *4 (Tex. App.—Corpus Christi–Edinburg 2006, no pet.) (mem. op.) ("To argue constructive discharge [in age discrimination suit under TCHRA], it follows that the employee must actually resign his employment.").

McLeod does not dispute that she did not actually resign, and the uncontroverted summary judgment evidence establishes that she was terminated in January 2018.[8] Because McLeod did not actually resign, we conclude that she cannot establish constructive discharge as a matter of law. *See Green*, 578 U.S. at 555 ("[A]n employee cannot bring a constructive-discharge claim until he is constructively *discharged*."); *Sacks*, 83 F.4th at 345; *Adams*, 2006 WL 1553353, at *4. McLeod did not rely on any other evidence to support the element of an adverse employment action, and thus the trial court was required to grant summary judgment

---

[8] As stated above, McLeod did not exhaust her administrative remedies concerning her termination, and therefore the termination of her employment cannot serve as an adverse employment action.

on McLeod's disability discrimination claim.[9] *See* TEX. R. CIV. P. 166a(i); *Donaldson*, 495 S.W.3d at 432. We conclude that McLeod did not meet her burden to establish a waiver of the Harris Center's governmental immunity from her disability discrimination claim. Accordingly, we hold that the trial court erred by denying summary judgment on this claim.

### 3. Retaliation Claim

The Harris Center argues that the trial court erred by denying summary judgment on McLeod's retaliation claim because McLeod did not present any evidence establishing that she engaged in an activity protected by the TCHRA, which is an essential element of her retaliation claim.

The TCHRA prohibits an employer from retaliating against an employee for engaging in certain protected activities. TEX. LAB. CODE § 21.055; *Anderson*, 458 S.W.3d at 647; *see also Clark*, 544 S.W.3d at 763 ("A retaliation claim is related to, but distinct from, a discrimination claim, and one may be viable even when the other is not."); *Davis v. Educ. Serv. Ctr.*, 62 S.W.3d 890, 894 (Tex. App.—Texarkana 2001, no pet.) ("Retaliation is an independent violation of the TCHRA[.]"). The

---

[9] Based on this conclusion, we do not separately consider the Harris Center's alternative argument that McLeod did not exhaust her administrative remedies for her claim of constructive discharge. *See* TEX. R. APP. P.47.1. Moreover, because the Harris Center was entitled to no-evidence summary judgment on McLeod's disability discrimination claim, we need not separately consider whether traditional summary judgment was proper on this claim. *See Donaldson*, 495 S.W.3d at 432.

elements of a TCHRA retaliation claim are: (1) the employee engaged in an activity protected by the TCHRA; (2) she experienced a material adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Lara*, 625 S.W.3d at 58; *Anderson*, 458 S.W.3d at 647.

The Harris Center characterizes McLeod's retaliation claim as alleging three protected activities: submission of the February 2017 nutritionist's note requesting more consistent lunch breaks at work; submission of the March 2017 internal grievance concerning McLaggan's first written reprimand; and submission of the July 2017 request for accommodation due to McLeod's major depressive disorder. The Harris Center argues that these three actions do not constitute protected activities as required to prove retaliation under the TCHRA.[10] McLeod does not dispute the Harris Center's characterization that these are the only three protected

---

[10]  The Harris Center also argues that McLeod did not disclose her major depressive disorder and anxiety until she filed the July 2017 request for accommodation, and she did not disclose that she had binge eating disorder until her deposition in the underlying litigation, and therefore the Harris Center could not have inferred that McLeod was complaining about any disability or discrimination due to any disability. But whether the Harris Center knew McLeod had a disability when she requested an accommodation is immaterial to our analysis of whether she engaged in protected activity. *See Flores v. Tex. Dep't of Crim. Just.*, 634 S.W.3d 440, 455 (Tex. App.—El Paso 2021, no pet.) ("Whether TDCJ knew Appellant suffered from a disability at the time the request was made, if in fact she did, is immaterial to our analysis of whether she engaged in a protected activity by making an accommodation request; what matters is whether the accommodation request notified TDCJ she believed she was being discriminated against for that disability.").

activities alleged in her petition, but she argues that these three activities are protected under the TCHRA.

TCHRA section 21.055 expressly prohibits retaliating against a person who: (1) opposes a discriminatory practice; (2) makes or files a charge of discrimination; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing. TEX. LAB. CODE § 21.055; *Anderson*, 458 S.W.3d at 647. Additionally, the Texas Supreme Court has held that to constitute protected activity under section 21.055, "the conduct relied on by the employee 'must, at a minimum, alert the employer to the employee's reasonable belief that unlawful discrimination is at issue.'" *Lara*, 625 S.W.3d at 59 (quoting *Clark*, 544 S.W.3d at 786). Invoking the TCHRA's anti-retaliatory provision does not require "magic words," but it does require more than merely complaining of "harassment," "hostile environment," "discrimination," "bullying," or rude, offensive, or inappropriate conduct. *Clark*, 544 S.W.3d at 786–87.

McLeod's submission of the February 2017 nutritionist's note did not constitute a protected activity under the TCHRA. According to the note, the nutritionist had been addressing McLeod's "need for consistent eating patterns at work to help with her overall health and well being," but inconsistent lunch breaks were "negatively impacting [McLeod's] overall health and wellness goals[.]" The note concluded that it would be "in the best interest of [McLeod's] health to be able

to have at least a 30 minute lunch around the same time (give or take 1–2 hours) on a daily basis while working."

A request for accommodation can constitute opposition to a discriminatory practice for purposes of establishing a TCHRA retaliation claim if the request "alert[s] the employer to the employee's reasonable belief that unlawful discrimination is at issue." *See Lara*, 625 S.W.3d at 59 (quoting *Clark*, 544 S.W.3d at 786). Here, nothing in the nutritionist's note indicates that McLeod believed unlawful discrimination was at issue. To the contrary, the note states that consistent lunch breaks were necessary for McLeod's "overall health and wellness goals." *Cf. Metro. Transit Auth. of Harris Cnty. v. Ridley*, 540 S.W.3d 91, 99–100 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (concluding that employee engaged in protected activity by making internal complaint stating that supervisor's criticisms were due to employee's race and gender and by making separate complaint stating that Metro retaliated against employee by refusing to allow her to return after medical leave with physical restrictions). McLeod does not rely on any other evidence raising a fact question on whether her request for consistent lunch breaks constituted actionable protected activity. *See* TEX. R. CIV. P. 166a(i); *Donaldson*, 495 S.W.3d at 432. We therefore conclude that the February 2017 nutritionist's note did not constitute protected activity as required to establish a prima facie retaliation claim under the TCHRA.

We also conclude that McLeod's submission of the March 2017 internal grievance against McLaggan did not constitute protected activity. In this grievance, McLeod complained that McLaggan's first written reprimand prohibited her from speaking to coworkers about non-work matters during business hours, which made McLeod feel "singled out for harassment." McLeod also complained that she was reprimanded for taking extended lunch breaks, which caused clients to wait extended times for their appointments. Finally, McLeod complained that McLaggan had "repeatedly spoken to [her] in an impatient, derogatory and disrespectful manner in front of [McLeod's] peers." The grievance concluded that "[t]he work environment has come to feel hostile, based on [McLaggan's] behavior toward [McLeod]"; McLeod was addressing the issue with a psychologist; and McLaggan's conduct caused McLeod to have work-related stress, anxiety, and depression.

Although filing a complaint is expressly listed in section 21.055, *see* TEX. LAB. CODE § 21.055(3), such a complaint only constitutes protected activity if it alerted the Harris Center that McLeod reasonably believed McLaggan's conduct constituted unlawful discrimination. *See Lara*, 625 S.W.3d at 59. Although magic words are not required, McLeod's complaints of a hostile work environment, harassment, and McLaggan's rude, inappropriate, and offensive comments are insufficient to constitute protected activity. *See Clark*, 544 S.W.3d at 786–87. The internal grievance did not state or imply that McLaggan's conduct was motivated by

unlawful discrimination. *See id.*; *Democratic Schs. Rsch., Inc. v. Rock*, 608 S.W.3d 290, 313 (Tex. App.—Houston [1st Dist.] 2020, no pet.) ("Rock complained only of behavior she considered offensive, but that does not invoke the TCHRA's anti-retaliation protection.").

McLeod argues that the March 2017 internal grievance referenced her prior request for "a regular and sufficient lunchtime at the office," and that after making this request, McLaggan began targeting her and lying about the amount of time she spent at lunch. We agree with McLeod that her internal grievance mentioned her nutritionist's note, but we disagree with the remainder of McLeod's argument. The internal grievance merely mentioned the nutritionist's note in passing. It did not state that McLaggan targeted McLeod and lied based on the nutritionist's note or any disability. Thus, the March 2017 internal grievance did not constitute protected activity as required to state a prima facie retaliation claim.

Finally, we conclude that McLeod's submission of the request for accommodation in July 2017 did not constitute a protected activity. In the request, specifically identified as a "Request for reasonable accommodation under ADA," McLeod expressly disclosed for the first time that she had major depressive disorder and anxiety. McLeod stated that her symptoms had been "triggered and greatly exacerbated" since she had begun working under McLaggan's supervision. The request also stated that McLaggan regularly spoke to her "in a derogatory,

disrespectful, inappropriate manner," making McLeod feel harassed. McLeod requested "reasonable accommodations to help with her disability—perhaps reassignment."

McLeod's accommodation request attached a letter from a psychologist stating that the psychologist had been treating McLeod for nearly eighteen years. According to the letter, McLeod's "distress" had increased since she began working under McLaggan's supervision, and McLeod's depression and anxiety symptoms were triggered and exacerbated by the stress caused by McLaggan. The letter disclosed that McLeod's recent medical leave was due to her worsening depression symptoms. The psychologist recommended that if McLeod were to request an accommodation, including reassignment, the request should be granted.

As stated above, a request for accommodation can constitute opposition to a discriminatory practice sufficient to state a TCHRA retaliation claim so long as the request alerts the employer to the employee's reasonable belief that unlawful discrimination is at issue. *See Lara*, 625 S.W.3d at 59. Although the request states that McLaggan's conduct caused McLeod's disability symptoms to worsen, the request does not state or imply that McLaggan's conduct was motivated by discriminatory animus. *See id.* To the contrary, the request merely complains of McLaggan's conduct generally, including McLaggan's allegedly rude, inappropriate, and offensive comments and harassment. These statements were

insufficient to alert the Harris Center to a reasonable belief that McLaggan was engaged in unlawful discriminatory conduct. *See id.*

We conclude that McLeod did not present any evidence raising a fact issue on whether she engaged in a protected activity as required to establish a prima facie case of retaliation under the TCHRA, and therefore the Harris Center was entitled to immunity from McLeod's retaliation claim.[11] *See id.* at 52; *Swanson*, 590 S.W.3d at 550. Accordingly, we hold that the trial court erred by denying summary judgment on McLeod's claim for retaliation under the TCHRA.

We sustain the Harris Center's sole appellate issue.

---

[11]    Because we conclude that the trial court erred by denying summary judgment on no-evidence grounds on this claim, we need not separately consider whether traditional summary judgment was proper on this claim. *See Donaldson*, 495 S.W.3d at 432. Furthermore, because McLeod did not meet her burden to establish a prima facie case for her claims, we need not consider whether the Harris Center's reasons for its actions were pretextual. *See* TEX. R. APP. P.47.1; *Tex. Tech Univ. Health Scis. Ctr.-El Paso v. Flores*, 612 S.W.3d 299, 305 (Tex. 2020).

## Conclusion

We reverse the trial court's order denying the Harris Center's combined second plea to the jurisdiction and motion for summary judgment, and we render judgment dismissing McLeod's claims against the Harris Center. *See* TEX. R. APP. P. 43.2(c).

April L. Farris
Justice

Panel consists of Justices Goodman, Countiss, and Farris.